## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

AUSTIN POORE,         )
                      )
       Plaintiff,     )
                      )
v.                  )     **Case No. 11-CV-44-JHP**
                      )
CONAGRA FOODS, INC.,   )
                      )
       Defendant.    )

## OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Brief in Support (Docket No. 16), Plaintiff's Response thereto (Docket No. 18), Defendant's subsequent Reply (Docket No. 25), and Plaintiff's Surreply (Docket No. 27).  Defendant's Motion to Dismiss attacks the Amended Complaint by arguing that (1) federal subject matter jurisdiction does not exist because the Longshore and Harbor Workers Compensation Act ("LHWCA"), 33 U.S.C. §§ 905(b) and 933(b),[1] does not apply to the facts of this case, and (2) even if LHWCA did apply to the facts of this case, the case would be barred by the statute of limitations.  The court finds that the this case does not fall under admiralty jurisdiction (28

---

[1]Specifically, 33 U.S.C. §§ 905(b) and 933(b).  § 905(b) states in relevant part,

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void.

33 U.S.C. § 905(b).  § 933(b) provides a framework for determining when an employee may sue a third-party under the act, and when the employee may not sue because he has accepted compensation from another source.  *See* 33 U.S.C. § 933(b); 2 A.L.R. FED. 1014 § 1[a].

U.S.C. §§ 1333), therefore LHWCA does not apply[2] and federal question jurisdiction (28 U.S.C.

§ 1331) also does not exist.[3]   As the LHWCA is not applicable to this case, Plaintiff Austin

Poore's cause of action is a negligence action arising under Oklahoma state law.  While this

court has federal subject matter jurisdiction over that claim pursuant to 28 U.S.C. § 1332

(diversity jurisdiction), Oklahoma's two-year statute of limitations for torts applies to bar the

instant case.  Accordingly, Defendant's Motion to Dismiss Plaintiff's Amended Complaint is

GRANTED, and this case is DISMISSED with prejudice.

FACTS

        Plaintiff Austin Poore ("Poore") is a citizen of Oklahoma and was employed by Lloyd

Richards Temps, located in Tulsa, Oklahoma.  Amended Complaint at 1-2, Docket No. 13.

Defendant ConAgra Foods, Inc. ("ConAgra") is incorporated in Delaware, with its headquarters

in Omaha, Nebraska, and does business in several states including Oklahoma.  *Id.* at 1.  Poore

was assigned through Lloyd Richards Temps to work for ConAgra as part of a clean-up crew on

ConAgra's vessel, located at the Port of Catoosa, Oklahoma.  *Id.* at 1-2; Response to Motion to

---

        [2]If admiralty jurisdiction does not exist, a plaintiff cannot maintain a maritime tort claim under LHWCA.  *See* Ozzello v. Peterson Builders, Inc., 743 F.Supp. 1302, 1318 (E.D. Wisc. 1990) (citing May v. Transworld Drilling Co. 786 F.2d 1261 (5th Cir.), *cert denied*, 479 U.S. 854 (1986)) ("[S]everal of the circuits concluded that a plaintiff must be able to meet the *Executive Jet* test for admiralty jurisdiction in order to maintain any maritime tort claim, *including one brought pursuant to section 905(b) of the LHWCA*.") (emphasis added).

        [3]Plaintiff does not appear to allege federal question jurisdiction in his Amended Complaint.  Because the only applicable federal statute to this cause of action is the LHWCA (33 U.S.C. §§ 905(b), 933(b)), the existence of federal question jurisdiction in this case is dependent upon the applicability of LHWCA; as the court has already noted, LHWCA does not apply to this case (*see supra* note 1) so federal question jurisdiction does not exist and will not be further addressed in this opinion.  *See* Russell v. Atlantic & Gulf Stevedores, 625 F.2d 71, 72 (5th Cir. 1980) (holding that as § 905(b) cannot provide a basis for admiralty jurisdiction, it also cannot provide a basis for federal question jurisdiction).

Dismiss at 5, Docket No. 18.  ConAgra's manager instructed Poore to work on and/or around the vessel owned by ConAgra on January 21, 2008.  Amended Complaint at 2, Docket No. 13.  On that date, Poore allegedly fell approximately twenty feet from a ladder which was part of ConAgra's vessel and sustained severe injuries.[4]  Poore claims these injuries were a direct result of ConAgra's negligent maintenance and/or supervision of their vessel. *Id.*

DISCUSSION

I.   *Federal Subject Matter Jurisdiction*

Poore's First Amended Complaint appears to allege federal subject matter jurisdiction exists under both 28 U.S.C. § 1333 (admiralty) and § 1332 (diversity), therefore both bases of jurisdiction will be discussed in this opinion.  Plaintiff has argued for the existence of admiralty jurisdiction because with it comes the potential that LHWCA's longer statute of limitation applies to the case.

A.    Admiralty Jurisdiction

Originally, the applicability of admiralty jurisdiction to any case depended on a strict test of locality: if an injury occurred on navigable waters, maritime law applied to the case.  *See* Executive Jet Aviation Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 253 (1972).  In 1972, the Supreme Court held in *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio* that "maritime locality alone is not a sufficient predicate for admiralty jurisdiction in aviation tort cases"[5] and

---

[4] *Id.*  The First Amended Complaint describes Plaintiff's injuries and their cause.  The approximately twenty-foot fall from a ladder on Defendant's vessel "caused Plaintiff to forcefully hit the metal floor of the vessel, causing severe injury to Plaintiff's feet, right ankle, left arm, left leg, left hand, left shoulder, left hip, back, and caused Plaintiff to experience headaches and dizziness." *Id*.

[5] *Id.* at 261; *see id.* at 250-51 (case involved airplane crash in Lake Erie after takeoff from the lakeside airport in Cleveland, Ohio; owner of plane attempted to bring suit in federal court, invoking admiralty jurisdction).

"[i]t is far more consistent with the history and purpose of admiralty to require also that the wrong bear a significant relationship to traditional maritime activity."[6]  Thus the *Executive Jet* test established that, for maritime jurisdiction to exist, in addition to the incident occurring at a "maritime locality," there must be a connection between the cause of the injury and "traditional maritime activity."  Together, these two requirements are referred to as the "situs" and "nexus" factors, respectively.[7]  Thus, after *Executive Jet*, the simple fact that an injury occurred on navigable waters is insufficient to invoke the admiralty jurisdiction.  In *Foremost Insurance Co. v. Richardson*, the Supreme Court expanded the applicability of the *Executive Jet* test, making it clear that any party asserting admiralty jurisdiction must demonstrate a nexus between the tort and traditional maritime activity.[8]

Therefore, in order to establish admiralty jurisdiction over his claim, Poore must do more than merely attempt to state a claim under LHWCA § 905(b).  Courts have generally held that alleging a cause of action under a maritime law  "does not automatically confer admiralty or federal question jurisdiction."[9]  Pursuant to the Supreme Court's holding in *Executive Jet* and subsequent caselaw, any maritime claim must meet the two-prong analysis stated in *Executive Jet*.[10]  Likewise, a tort claim cannot be maintained pursuant to maritime law, such as LHWCA, if

---

[6]*Id.* at 267.

[7]*See* Molett v. Penrod Drilling Co. 872 F.2d 1221, 1224 (5th Cir.) (*per curiam*), *cert denied sub nom.* Columbus-McKinnon, Inc. v. Grearench, Inc., 493 U.S. 1003 (1989).

[8]457 U.S. 668, 673-74 (1982). (*Executive Jet* test no longer exclusively applies to context of aviation torts but should be applied to determine federal admiralty jurisdiction for other maritime torts).

[9]Ozzello v. Peterson Builders, Inc., 743 F.Supp. 1302, 1315 (E.D. Wisc. 1990) (citing Drake v. Raymark Industries, Inc., 772 F.2d 1007, 1011-19 (1st Cir. 1985), *cert. denied sub nom.* Raymark Industries Inc. V. Bath Iron Works Corp., 476 U.S. 1126 (1986)).

[10]*Molett*, 872 F.2d at 1224.

the *Executive Jet* test is not satisfied.[11]  Thus, both the existence of admiralty jurisdiction and the applicability of § 905(b) to Poore's case hinge on whether the facts of Poore's comport with the "situs" and "nexus" factors delineated above.

        1.     "Situs"

Poore's claim satisfies the "situs" factor of the *Executive Jet* test because his injury occurred on navigable waters.[12]  Poore's Amended Complaint alleges that the injury occurred while Poore was part of a clean-up crew on or around the vessel owned by ConAgra, which was "at port" in the Port of Catoosa on the date of Poore's injury.[13]  A port is "[a] harbor where ships load and unload cargo,"[14] meaning the water is deep enough along the shore so a vessel can anchor.[15]  ConAgra's vessel, on which Poore was injured, was "at port" when Poore was injured. General knowledge of these words implies that the vessel was anchored on the waters of the Port of Catoosa when Poore was injured; therefore Poore's injury occurred on navigable waters and the "situs" factor is satisfied.

        2.     "Nexus"

The "nexus" factor asks whether "the wrong bear[s] a significant relationship to traditional maritime activity."[16]  When analyzing the issue of whether there is "a substantial relationship between the activity giving rise to the incident and traditional maritime activity," the

---

[11]*See supra* note 2.

[12]*See* Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 254-55 (1972) (providing historical usage and meaning of "navigable waters").

[13]Amended Complaint at 2, Docket No. 13.  The Port of Catoosa is located near Tulsa, Oklahoma, and can be accessed internationally via the McClellan-Kerr Arkansas River Navigation System.  Tulsa Port of Catoosa, *Port Location*, TULSAPORT.COM, http://tulsaport.com/location.html.

[14]BLACK'S LAW DICTIONARY 1279 (9th ed. 2009).

[15]WEBSTER'S II NEW COLLEGE DICTIONARY 504 (1995).

[16]*Executive Jet*, 409 U.S. at 504.

court must first "define the relevant activity."[17]  "[T]he relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose."[18]  Poore asserts that his injury occurred when he fell from a ladder while cleaning ConAgra's vessel at port in the Port of Catoosa.[19]  Thus, for the purposes of this jurisdictional analysis, the general conduct from which the injury arose was cleaning a vessel.

Next, the court must determine whether the general conduct, in this case cleaning a vessel, is substantially related to a traditional maritime activity.[20]  Interpreting the Supreme Court precedent found in *Executive Jet*, *Foremost*, and *Sisson*, the district court in *Ozzello v. Peterson Builders, Inc.* found that

> the following factors weigh in favor of exercising maritime tort jurisdiction:
> —when the accident occurs in the course of maritime service;
> —when the accident occurs in the course of navigation;
> —when the accident occurs in the course of promoting maritime commerce or presents a hazard to maritime commerce;
> —when the conduct gives rise to the need for the application of admiralty law, particularly the uniform "rules of the road" governing navigation.[21]

In *Ozzello*, the plaintiff had sued under LHWCA § 905(b) after being injured while participating in the general activity of shipbuilding.[22]  Ozzello had been testing and inspecting equipment installed on the vessel by his employer when he stepped on a hose nozzle negligently left in his path and sprained his ankle.[23]  Analyzing whether Ozzello's shipbuilding activity was a "traditional maritime activity" according to the factors set out above, the court noted:

---

[17]Sisson v. Ruby, 497 U.S. 358, 364 (1990).

[18]*Id.*

[19]*See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint at 5, Docket No. 18.

[20]*See Sisson*, 497 U.S. at 364.

[21]743 F.Supp. 1302, 1323 (E.D. Wisc. 1991).

[22]*See id.* at 1322.

[23]*Id.* at 1305, 1322.

[O]nly the location of Ozzello's injury weighs in favor of exercising admiralty jurisdiction. . . . However, the involvement of the [ship] was tangential. The ship was not in navigation at the time of the injury and the plaintiffs presented no evidence that the general conduct involved had any effect on maritime commerce. Moreover, there is no evidence that William Ozzello or any of [his employer's] personnel were performing the work of seamen or that the hazard (a hose nozzle) is a piece of equipment perculiar to ships or navigation.

Under these circumstances, the resolution of the Ozzellos' claims does not require the special expertise of a court in admiralty. The fundamental interests giving rise to the need to apply admiralty law are the protection of maritime commerce and the need for uniform rules of navigation. . . .

The conduct which forms the basis for the Ozzellos' claims is more closely related to land-based negligence than to negligence taking place in maritime commerce or navigation. Furthermore, legal issues are identical to those presented in countless other stumble and fall cases that are resolved by local tort law.[24]

The *Ozzello* court concluded that "there was no substantial relationship between Ozzello's injury and traditional maritime activity."[25]

While *Ozzello* involved the general activity of shipbuilding in contrast to this case's activity of cleaning a vessel, the reasoning in *Ozzello* is applicable. None of the factors mentioned in Supreme Court precedent favor admiralty jurisdiction in this case except that of locality. Indeed, Poore's injury occurred on navigable waters, but the connection to admiralty ends there. ConAgra's vessel was not "in navigation" at the time of the injury – it is undisputed that the vessel was "at port" at that time. Plaintiff has presented no evidence nor argued any connection to "maritime commerce" other than an unsupported and conclusive statement made in plaintiff's response brief.[26] If there be a connection between cleaning a vessel and maritime commerce, such connection is minimal and insufficient to sway the factors in favor of admiralty

---

[24]*Id.* at 1323-24 (citing *Sisson*, 497 U.S. at 367; Foremost Ins. Co. v. Richardson, 457 U.S. 668, 676 (1982); Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 269-70 (1972)) (internal citations and footnote omitted).

[25]*Id.* at 1324.

[26]*See* Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint at 5, Docket No. 18

jurisdiction.  With regard to the final factor, there is no need for the application of admiralty

law's uniform "rules of the road" to this comparatively basic negligence claim involving a fall

from a ladder.

Further, there is no evidence that Poore's action of cleaning or the objects involved in the

injury (a ladder and a platform) are unique to a maritime setting.  Thus, "the resolution of

[Poore's] claim[] does not require the special expertise of a court in admiralty."[27]  The activity

involved in this case "is more closely related to land-based negligence" than to negligence based

in maritime law.[28]  Oklahoma courts could plainly exercise jurisdiction over this claim and

familiar state tort law could easily be applied to this case.[29]  Accordingly, this court finds that

pursuant to existing precedent cleaning a vessel is not a "traditional maritime activity."  Thus,

the "nexus" factor of the *Executive Jet* test for admiralty jurisdiction is not satisfied.

Where there is no unique federal interest in a claim, it is proper for the court to exercise

the congressional grant of admiralty jurisdiction with caution.[30]  The court finds that admiralty

jurisdiction does not exist over this case.

B.      Diversity Jurisdiction

Though the court lacks admiralty jurisdiction, diversity jurisdiction exists pursuant to 28

U.S.C. § 1332.  "The district courts shall have original jurisdiction of all civil actions where the

---

[27]*See id.* at 1323.

[28]*See id.* at 1324.

[29]*See Executive Jet*, 409 U.S. at 273 (holding that in situations that are "only fortuitously and incidentally connected to navigable waters and which bear[] no relationship to traditional maritime activity, the [state] courts could plainly exercise jurisdiction over the suit, and could plainly apply familiar concepts of [state] tort law without any effect on maritime endeavors").

[30]*See* In re: Katrina Canal Breaches Litigation, 324 Fed. App'x 370, 379 (5th Cir. 2009) (not selected for publication) (citingWoessner v. Johns-Manville Sales Corp., 757 F.2d 634, 648-49 (5th Cir. 1985)).

matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."[31]  In this case, Poore alleges his damages exceed $75,000.[32]  Further, the pleadings demonstrate that plaintiff Poore is a citizen of Oklahoma, while defendant ConAgra, Inc. is "a corporation organized under the laws of the State of Delaware, having its headquarters in Omaha, Nebraska . . . ."[33]  Thus there is complete diversity amongst the two parties and the amount in controversy exceeds the minimum required by 28 U.S.C. § 1332.  Diversity jurisdiction exists in this case.

II.      Statute of Limitation

Defendant has also moved to dismiss on the grounds that the applicable statute of limitations bars the action.  The Amended Complaint states that Poore's injury occurred on January 21, 2008.[34]  Poore's original Complaint was filed on January 20, 2011,[35] one day shy of the three-year anniversary of Poore's injury.  Poore's complaint was subsequently amended on February 28, 2011.[36]  Defendant argues that Poore's Amended Complaint does not relate back to the filing date of the original complaint,[37] therefore it is barred by LHWCA's three-year statute of limitations.  While the court does not agree with the Defendant's specific argument, it holds that this action is barred by the applicable statute of limitations.

A.      Maritime Statute of Limitations

---

[31]28 U.S.C. § 1332(a)(1).
[32]Amended Complaint at 1-2, Docket No. 13.
[33]*Id.* at 1.
[34]*Id.* at 2.
[35]*See* Docket No. 1.
[36]*See* Docket No. 13.
[37]The issue of whether Poore's Amended Complaint relates back to the date of the original complaint is now moot because the court finds that LHWCA's three-year statute of limitation does not apply to the case at hand, *see infra.*

The statute of limitations for maritime torts is three years.[38]  This general three-year statute of limitations applies to actions for negligence brought pursuant to LHWCA § 905(b),[39] as Poore has done in this case.  The maritime statute of limitations cannot apply to this case because the court has already held this case does not fall within the court's admiralty jurisdiction.[40]  As admiralty jurisdiction does not apply, maritime law and its general statute of limitations likewise do not apply.[41]  Thus, due to the failure of admiralty jurisdiction, Poore's negligence claim is governed by the Oklahoma state tort law and the applicable statute of limitation found therein.

B.      Oklahoma Tort Statute of Limitation

Oklahoma law prescribes various limitation periods for differing causes of action.[42] Pursuant to OKLA. STAT. tit. 12 § 95(A)(3), an action for negligence must be brought within two years of the date of injury.[43]  Poore's injury occurred on January 21, 2008; the original Complaint in this case was not filed until January 20, 2011,[44] nearly three years after the date of injury.  Poore stated no reason in the pleading or briefing of the pending Motion to Dismiss why the applicable statute of limitation should be tolled.  Additionally, Poore admits in his Surreply to the Motion to Dismiss that "Plaintiff in this case has never filed this case before January 20,

---

[38]*See* 46 U.S.C.App. § 763a; *see also* McCartney v. Kanawha River Towing, Inc., 921 F.Supp. 1504, 1505 (S.D.W.Va. 1996).

[39]*See, e.g.* Thibodeaux v. Vamos Oil & Gas Co., 555 F.Supp.2d 711, 718 (W.D.La. 2008) (applying general three-year statute of limitation for maritime tort to LHWCA § 905(b) claim).

[40]*See supra* section I.A.

[41]*See supra* note 2, 11 and accompanying text.

[42]*See generally* OKLA. STAT. tit. 12 § 95.

[43]*Id.* § 95(A)(3) ("Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . . Within two (2) years: . . . an action for injury to the rights of another").

[44]*See* Amended Complaint at 2, Docket No. 13; Docket No. 1.

2011 . . . ."[45]   It is abundantly clear from the record that this case was filed well outside the applicable two-year statute of limitations.

Issues regarding the statute of limitation may "be appropriately resolved on a Fed.R.Civ.P. 12(b) motion" when it is clear from the face of the complaint that "the right sued upon has been extinguished."[46]   Accordingly, this case is appropriately dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

CONCLUSION

For the reasons cited herein, Defendant ConAgra Foods, Inc.'s Motion to Dismiss (Docket No. 16) is GRANTED.  This action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 12th day of September, 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[45]Plaintiff's Surreply to Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint at 1, Docket No. 27.
[46]Aldrich v. McCulloch Properties, Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980).